525-0499. Attorney for the villain, Mr. Neumeister. All right. And Mr. Gilder. All right. If you're ready, you may proceed. And if you would, just state your name. Yes, good morning, Your Honors. I'm Assistant Attorney General of the Illinois Labor Relations Bd. General Dave Neumeister, on behalf of the people, on behalf of the Board. May it please the Court and the Council. The best place to start with this is to clarify why we're here, the nature of this action, and how this Court should handle it. We're here because the Village has, beyond dispute, committed an unfair labor practice and violated the Village's compliance orders. The Village says that they've complied with everything except payment of money. Do you agree with that? The record doesn't show whether they have or not. They have made that representation. You're correct, Justice McKinney, but they haven't, to my way of, to my understanding, documented it to the point where we could acknowledge, yes, they have, or no, they haven't. But they would, in the course of these proceedings, have the opportunity to present that, and well, the first thing they would do is get together with the Teamsters, and they would come to us with some stipulation that says, yes, indeed, they have complied. They haven't taken that issue off the table. They have made that representation, but again, that would be between the Teamsters and the Village to acknowledge and let us know, and then that compliance could be documented. Assuming, if we grant your petition request, if we grant the petition. Yes. Then what? What if they're broke? I think that's what they said. To boil down your opposing counsel's argument is, we ain't got the money. Right. I mean, what does this court do? Yeah. Well, you've cut off a little bit of that. And I'm getting to the chase. Oh, the chase is here, believe me. I want to talk to your audience about the chase, because that's what I figured we would ultimately be talking about today. But we're asking for an order that grants our enforcement petition and gives the Village a certain amount of time that you would specify to comply. And we could come back, perhaps, with a periodic status report that would attach information that they have complied with and what they have not. And then the statute says that you retain jurisdiction to enforce orders against the Village through the contempt powers that any court would have and that the statute gives you. So the way that I see it is that if the Village, let's just say we take this to your logical conclusion, you enter the order that we are asking for. The time goes by, the Village doesn't pay. Then we would come in on a motion for an order to show cause. And just like any other, you know, like a contempt set, for a contempt citation. Would you be asking for civil contempt or criminal contempt? You want money, right? Yes, we want the money. You want us to compel performance, future performance. Yeah, the statute, I believe, I can look right here, but I believe the statute says, refers to a civil contempt power. All right. How do we compel future performance that cannot be performed? We're broke. Are you going to be asking us to make them issue a tax increase on the citizens of Washington Park? I think at a certain point, the order that you would enter becomes akin to a judgment that the judgment creditor, be it the state on behalf of the, not the state on behalf, maybe the state on behalf of the Board or perhaps the Teamsters, as ultimately a judgment creditor would come in on an enforcement proceeding akin to... But let me piggyback on that. We're a court of review. I recognize the jurisdiction last year and that the statute sends you here. But we're a court of review. I mean, at some point, are we going to be ordering the village of Washington Park to sell assets? I mean, what is that going to look like in terms of this court and our power? And how do we enforce our own judgment at that point? You have the enforcement powers that any court would have. I think you would go through the normal procedures that you would find, for example, in a trial court, a citation to discover assets. And the village would have to come forward and put its cards on the table. And yes, there are steps that can be taken in a citation proceeding, as your honors well know. Potential attachments, garnishments, forced tax levy has been mentioned in some case law, and other remedies that are appropriate for enforcement against the municipality. So yes, Justice McKinney, you mentioned a forced tax levy that has been mentioned as an implement that could be provided. And I just want to be clear that whatever you do will not involve taking new evidence. The evidentiary record is closed. Anything that's going to come before you will come before you in the form of the Illinois Supreme Court rules, the 300 series by motion practice, substantiated by the appropriate affidavits or stipulations or what it might be. And unless you claim that their citation to discover assets is bogus, there are answers to it. And that's going to require some evidence, isn't there? Isn't it? What I mean, Justice McKinney, is that it would not require this court to hear evidence. You wouldn't take evidence like a trial court would, or like the board did, and the board did. Whatever is going to be presented to you is going to be presented in, let's just say, an agreed fashion. The evidence would be established out, like the supporting records that we filed. The evidence, for lack of a better term, we'll call it evidence, their evidence, if we call it that, of inability to pay, would have to be appropriately documented. Perhaps they appropriate evidentiary fashion, be it via stipulation, certification pursuant to Rule 109, whatever it may be. And if they come forward with that, then at some point we get to where you are down the road, a potential citation to discover assets, enforcement proceedings that could involve, like I've said, attachments, garnishments, potential tax levies. But hopefully, in a perfect world, we would not get to that point. The village would go back and settle with the Teamsters and agree on some sort of a plan, and we would monitor compliance. And if they agree to a settlement, a payment plan, whatever it might be, then establish that that's been done, then the case could be closed. Let me interrupt you, though. Sure. So, they're going to come up here, they said so much in their brief that they can't pay. So, I don't think that perfect world necessarily will exist in this case. So, I'm looking at your Exhibit 3 that you filed. Right. This was an order that was entered, and was this in the first judicial? It's the first district order, I believe. First district order. Yes. And was that an order, sorry, I'm just, was that an order for compliance that involved financial remedies, or was that an order for compliance that involved other remedies? I'm just having a glance at the order. Yeah, I'm sorry. No, no, not at all. It's a fair question. I need a road map, is what I'm suggesting. Right. Well, these orders provide the road map. And I can't represent, to your honor, whether this involved the payment of money or it didn't. I don't know the exact answer to your question, although I could make it an additional, you know, written submission to this court, if you would like. I could find out. But, being realistic, I don't think anybody's going to go to this extent if it doesn't involve money. If all it involves is posting notices and bargaining in good faith and taking whatever non-monetary measures that a labor organization is supposed to take, if no money's involved, then I can't go to this extent. So, again, I can't make a positive representation to you, but I think we could assume it didn't get to that point unless there was money involved. But, again, if your honors would like a further written submission from me, I can find out. But that's where we are. This court's jurisdiction is clear. And the village, they say they can't pay, but they really haven't done anything other than allege it right here. They would have to, again, if this is a defense that they're going to raise, well, they blew it before the board because they were late in filing objections, they didn't file any exceptions to the board's orders, and they didn't seek any administrative review in this court. So they have really blown their opportunity to raise that, and they have not exhausted their administrative remedies. So, first of all, there's no bar to the entry of an order at this point. And we've provided a couple of specimens of what the order would look like that your honors should indeed enter. Then if there's true inability to pay, they'll have the opportunity to come forward and try to document that for what it might be worth in any further proceedings if they don't comply, which is assuming noncompliance, which would be when we come back in on a motion for a rule to show cause. That, I assume, when they would have the opportunity to unwind their pockets in any way that they see fit, as long as what they submit or maybe agree to with the Teamsters complies with the Supreme Court rules for submissions, you know, to your honor via motion. I don't mean that, because I'm harkening back to my trial court days. This is the perfect example of a case, if it came before us at the trial level, that we'd be having this conversation in chambers with both counsel going, okay, how are we going to work this out without spending a bunch of time, money, a hearing? I'm not saying the arguments are not valid either side. I'm here to hear them. But this is the perfect example that we are now essentially the trial court, because we're going to have to act like a trial court when it comes to these various things, if they're filed. Again, we'd be back in chambers going, okay, boys, how are we going to get, and I'm very colloquial because I'm from extreme southern Illinois, how are we going to get this worked out and walk out of here with an agreement of, we're going to enter this order today, we're giving you 180 days, 90, whatever it is, that is agreed to upon, and I'm kind of doing it from the bench, because I don't think to be, I'm not showing all my cards, but I don't think anybody's going to disagree that the order's probably not, you know, it is proper. The order enforcement is proper. We have the jurisdiction, give them what we have. It's just, and that's what we're brought up is, what's the next steps? Well, and along those lines, my question was going to be, what is the timeframe? That was where I was headed, which is the direction that Justice Bowie's headed. I mean, I don't know the dollar amount. I don't know anything of that nature. I mean, is this, you're asking for compliance in one month, three months, three years? That's a matter for your honors to fill in the blank. The sample orders that we've provided, one says 14 days. Well, that's just ridiculous, frankly. I don't mean to speak in – We're talking significant amounts. I forget what it is. It's a significant amount of money. Yeah, the money you're on is correct. It's within a few dollars. The lump sum is about $735,000, and there's interest running on that 7% a year. But ideally, Justice Bowie, if I can expand on your thoughts about if this were the trial court, I've been in some of those proceedings, too, a long, long time ago. I know you have. And the teamsters would also have to be involved. And they've got counsel. They are not a party, but their counsel is being served and knew that we were coming to talk today. But I'm colloquial, too, because I'm from Chicago. And those – let's just call them pretrial conferences. Absolutely. Yeah, that's where the head-knocking goes on. And that's what I would love to be able to have happen here, but that's got to happen between the teamsters and the village, really. We can serve as – well, we represent the board, but – and we could be, for lack of a better term, an intermediary or a facilitator. But, yeah, heads need to be knocked, and the teamsters and the village need to agree on something. But what's going to start that process is for your honors to enter the order that we are asking for here today. I think it's pretty clear that we've satisfied the criteria. We've provided examples, and we've explained what we want. And then, you know, the later proceedings would come, as I've suggested. And a reasonable time for your honors to fill in, that's up to you. If you're looking for a suggestion from me, I don't think – I don't think anything shorter than three months makes any sense at all. Longer than that, three to six, somewhere in that vicinity, would probably give the village and the teamsters time to have their conversations and decide what they're going to do because you do have these contempt powers, and they are real, and you can impose whatever penalties would go along with that. And we could indeed get to enforcement – you know, citation and enforcement proceedings if it comes to that. But for today, we're asking that you enter the compliance order that we're asking for. If a municipality files bankruptcy, do we lose jurisdiction? I would say no. Bankruptcy – I'm talking out of my realm now, but I'm happy to – Out of my realm, too. Okay, well, I have dealt with some bankrupt – Counsel, I'll ask you to address that same question. I'm beyond my time, but I want to answer your question. If there's a bankruptcy proceeding, what I understand is you would still retain jurisdiction, but there could possibly be an automatic stay imposed in this action, and then one of the parties, if we want to proceed further here, we would have to go to the bankruptcy – I'm not sure which party it would be. We'd have to go to the bankruptcy court with a motion to lift the automatic stay, so that we can come back here and have some more fun. Would there be a trustee appointed? Yes. But lose jurisdiction – no. Automatic stay – that's the way I believe that it would happen. We'd have to go get it lifted, then we could come back.  Any other questions? No. All right, thank you. You'll have time one more time. Of course. All right, counsel, if you'll stay during, please, and then I'm sure we have lots of questions for you. Certainly. Good morning. My name is Anthony Gilbreth with the law firm of St. Clair Gilbreth. It's that big. I represent the Village of Washington Park, a respondent in this matter. My binder just came apart again, like it did in the waiting room. May it please the Court, Mr. Neumeister? Sure. The Court has already begun to address and begun to ask the same practical questions that my client and I have with regard to these proceedings. Let me stop you. Yes, Your Honor. I mean, it looks pretty clear even from your own brief that you understand that an enforcement order is appropriate in light of the fact that, I'm not asking you to concede necessarily, but in light of the fact that there are money owed. You agree that there is money owed. I agree that there is money owed. Pursuant to the order, I agree that the Village failed to exhaust any administrative remedies with regard to the appropriateness, for lack of a better term, of the orders issued by the court. I do think there is what might perhaps be an academic issue, but I do think there is a fair question about whether or not that CBA is enforceable, under that City of Belleville case that I cited in my brief, because I can't say this with certainty, because when administrations change in the Village of Washington Park, the records tend to change with it. So I cannot say whether we have any minutes that document the approval of that contract by the Board of Trustees, either before or after its execution. I can tell you that it was signed April 21st. The successor mayor was elected on or about April 6th, and the first meeting to appoint new officers and municipalities, at least in this neck of the woods, is the first meeting in May. So it is very unlikely that that contract was presented to the Board of Trustees of the Village of Washington Park for approval after it was signed. I cannot say with any certainty, and I have no records at my disposal to present to the court, as to whether that contract was approved before it was signed by the Board of Trustees. So it is potentially void. That was never written before the ILRB. Can we enforce a void contract in these proceedings, these original proceedings before this court? I don't know, because I can't find a single case on point with regard to this particular statutory proceeding. And I don't believe my opponent, nor the court, can or hasn't either. So we're kind of in uncharted waters from my perspective. But all that being said, I believe the best legal argument in this case is that the order is appropriate. But I do agree, practically, where do we go from here? Because we can talk about levying assets. We can't do that under a state of devote. You cannot levy against municipal assets to collect on a judgment. You can't do that. So then we're left with contempt. Okay, who do we hold in contempt? Excuse me, the Board, through the state, has indicated that it doesn't wish to hold the individual officers of the municipality responsible on the order. So then who are we going to hold in contempt? Are we going to hold the village in contempt? That doesn't really work. Could all these arguments be heard to be said, the village is trying to avoid its obligations? Yes, that's not what I'm trying to argue. What I'm trying to say is, how do we do this? Because to your point, Justice Dewey, I had trouble preparing for this argument today because I thought to myself, this is something we go back in chambers on a citation to discover assets and talk about and figure out, what are we going to do here? And I agree with Mr. Neumeister that we are talking with the Teamsters. The problem is the Teamsters are kind of fed up with the village at this point. I can't compel the Teamsters to accept a proposal. I don't even have the money to make a proposal with. What's my proposal going to be, $100 a month? Well, that takes a long time for me to get to a million bucks, which is about where this stands right now with interest accruing for the last couple of years. So we have a very practical problem here. And while that's not what the statute says, the statute doesn't mention that, but it does make the question of, we're going to have to come back here on something, and what does that look like? And usually the court would take evidence on a citation to discover assets. Usually we would put the mayor or the treasurer on the stand and say, all right, mayor, where's the money? Where do you bank? Where do you work? What kind of police cars do you have? But again, we are necessarily limited in our remedies under a state of debaux. There's going to have to be money, fact-finding. There's going to have to be a credibility assessment. Let's assume we get through all that. Let's assume we get through all this. We can issue it. We can levy a tax on a, I don't know how familiar you are with this particular municipality. The tax base is almost zero. Nearly the entirety of the municipality is encompassed within one or more TIF districts. And the collection rate is not that high either. The tax rate is already in the neighborhood of 18 or 20 percent. The tax rate, because the tax base, the median assessed value, is so low. Bankruptcy. This particular municipality attempted to declare bankruptcy about 15 years ago or so. Seventh Circuit says municipalities cannot do that, that there's a constitutional prohibition against municipalities declaring bankruptcy in the state of Illinois. I don't have that case handy, but I remember that case because I was trying to collect money from this village about 15 or 20 years ago. Well, with respect to enforcement, we could order the village to disclose every penny in any account, anywhere.  I see no reason the court could not do this. And then we could also say, all right, every account, pay it to the teamsters within 14 days. Correct. But how do we pay our street department, our sewer department, our municipal employees, our police officers? What's your problem? Our problem is, we're stuck with this by the legislature. We've got to drive it. That's what I get home to. Yeah, this is a legislative problem, I would say, to be quite honest. Well, and then, I mean, thinking, we're thinking way far in advance here. If you do that, you're back here with the labor relations issue again. That's right. We have to pay because of the order. I know this isn't in the record, but we already don't have liability insurance because we can't afford it. We already do not have workers' compensation insurance because we can't afford it. We already do not have automobile insurance on our police cars because we can't afford it. Yeah, I remember when Taro got into hot water a few years ago, and police cars got repossessed. So what about this? What about an order that open-ended says that you'll cooperate to effectuate a settlement? What about something very open? And I know we're kind of talking amongst ourselves. And frankly, while I recognize it is the antithesis of typical appellate procedure, I am more than happy to have a pow-wow, a round table here. Yeah, totally. I mean, we're just kicking the ball around trying to solve this problem because I have a procedure requirement. Indeed it is. And a practical one, Your Honor. Yeah, I mean, I don't necessarily want to be involved in the citations, but the statute says we are. Well, that's what I was going to say. We have to wrap our heads around that. And you can't really delegate that, right? You can't issue like a, oh gosh, it's not mandamus, but like a mandatory order to a trial court to say, hey, hold the citation hearing and send us a record. I mean, we don't even have a court reporter. Right. Just practically speaking, how do we do this? I think it's for our PJ, our new PJ to figure out. I told you he's not listening. I try to inject some humor sometimes. Well, you and I are kind of the same cloth, Judge. You know, but Justice is exactly correct. You know, we would have to think how we were going to proceed. Are we going to have to call Jefferson County and get a court reporter over here someday? You know, those are just things that. Do you want one of us to bring one? That's just what we're just going to have to figure out. You can't afford one. Correct. Well, I mean, that's just it, you know. The state has unlimited resources. All right. And again, I don't come here. I know I'm standing here essentially with my hat in my hand, which is an uncomfortable position to be in the appellate court if anybody's never been there before. I'm going to deal with a jurisdiction question right off the bat. But I don't. Frankly, I agree with the court and with Mr. Muehmeister. Statutorily, I mean, the village is not in compliance with a final binding order. Yes, the order is appropriate. But then where do we go from there? And what's interesting is the statute says that the court, this court, can grant the relief requested in whole or in part. Well, that language in and of itself puzzles me because if we're working off of the record before the board, I guess the court could say, okay, well, we'll enforce this. Well, we'll grant you an order as to enforcing this part of the court's order or the board's order, but not this one. And that, to me, honestly, that language, it rattles my brain a little bit because that's not usually the way this court sits. And frankly, I think we're all struggling a little bit conceptually with that. Also, not to mention the fact that, like I said, statute interest is just racking up on a daily basis. That's exactly right. I've got the per diem in here somewhere. And do we have the power to say that's going to stop? But wouldn't that be modifying the board's decision? And I can't ask you to do that. If I'm being honest and candid with the court, I mean, that would be asking to modify the board's decision. And that may be something that the Feimsters, not to come out and say we're willing to back off on this. That's all in that negotiation. At the cost, it would go after the orders enter before we had to come back. I'm not advocating for that, but just thinking the process through, those are going to be things that are discussed between the parties. And I can tell you I've come to some resolution. Yes. And Mr. Soule, Britt Soule is the attorney at Kavanaugh and O'Hara for the Teamsters. And Mr. Soule and I, he's not here to defend himself, but I would say have a good working relationship. But I think his client has exhausted his patience with my client. And my client is, nevertheless, my client's position is still what it is financially. We have, I mean, you know, again, not to, this is all just kind of food for thought, honestly, but we have brought the persons that were underpaid up to the contractual rates. So we are paying current contractual rates under the contract, which is good. And that is, that means something to the Teamsters. But it's kind of hard to convince somebody that has a six- or seven-figure dollar judgment against you to back off, although they're the last in a long line to be co-inframed. They are not the first with a significant financial obligation owed by the Village of Washington Park, and they probably will not be the last. Well, again, that's what the attorneys and the representatives from the Village, the Teamsters, the State, the Board, whatever, those are just the realistic issues that have to be talked about around a table. I'd advise getting a bottle of bourbon and saying, okay, again, gentlemen, how are we going to get this thing? Try to figure out to some benefit. You know, that's where you are. I agree wholeheartedly. Anything else? I don't mean to perfume, but do you need any more argument out of me? No, we appreciate your pain. No, I agree, too. Justices, I do. And I'm not – A time machine back six years ago. Yeah, right, right. That's my – that tends to be my closing argument in jury trials. The civil justice system is not a time machine. All we can do is move money. All right. Thank you very much. Mr. Neumeier, sir, if you'd like to make some parting statements or wisdom. Yes, thank you. Wisdom would be a little self-indulgent. I won't give myself that much credit. Just very briefly, this is not any time to be modifying the Board's decision. The Board's decision is what it is. That's in place. And we would urge your honors not to enter an order that's just completely open-ended. We would urge your honors – there's no dispute, I think, that a compliance order is proper. We would urge your honors to put a reasonable time frame in it for compliance, for the village to comply by X date. And, you know, a reasonable date, I think, you know, we know that that's at your discretion. But I think it's also within your discretion to say that the village and the Teamsters are to meet and confer. The Teamsters aren't a party to this appeal. It's not an appeal. They're not a party to this action. But to order, in addition to a compliance date, order the village to meet and confer with the Teamsters. In addition to the other – and we would report back to you, perhaps, in writing as you see fit. But that's, I think, what we would do today. We would be asking you for today. There's no dispute that a compliance order is proper. We've addressed in a number of ways how it could be addressed and what we would do going forward. I don't have anything more to add to that. But I thank your honors for the opportunity to have this conversation and for your time and attention. In a perfect world, the Teamsters and the village could get this wrapped up, but we will see. And come back to your honors with whatever is next after the order that you want. So, thank you very much again for your time today. So, I think your suggestions – and I know – well, we're doing – in fact, I'm going to ask you to do this a little different. And get input from opposing counsel. I think what you just said is reasonable about what we put in the order. As far as a report or a status, would that be a written report? Will we come back for like a – if we're all on the same panel sometime, come back for a short status here in person to know what's going on? I just – Suggestion. I had some – following your logic there. A compliance order would order that the parties must meet and confer. And I wrote to decide I need that further defined within a certain amount of time. And then I think there would be a report back thereafter on that. And then the other note that I wrote is that all non-monetary provisions must be complied with within a certain timeframe. And proof of the same must be submitted to the parties in the court. Is that reasonable? Is the court inquiring? Yes, I'm inquiring. But I would say that that is reasonable. The only thing I would – excuse me. I almost said that. The only thing I would ask is that what that proof – what the court – if it's an affidavit out of my mayor or what that would look like just so that I know that I'm complying with the court. All right. Define the proof. And I'm not asking to put that on the court. Perhaps me and Mr. Neumeister could come up with that. I'm not asking the court to carry my water. And I know Mr. Neumeister isn't, but perhaps I would want to know what it is. Mr. Neumeister, along those lines. I would envision some sort of a written stipulation between counsel here and counsel for the Teamsters that we would submit just in writing. But if we wanted to do something in person, we could send those and set it.  Or a motion would be fine. Yeah. I mean, I think it could all be done on paper. Sure. Or we could do it by Zoom as well. Sure. We could do a virtual meeting on something like this where it's not necessarily the reception of argument or preservation for posterity. That would be a heck of a lot easier to set up a Zoom meeting with the three of us and possibly have us all three on a panel. Just how timing things go. So that is a great suggestion if we did do something in person. That way, you're in Chicago, you say, so you're not traveling down here. I believe that's a great suggestion if we have to believe we need to get together in person again. Yeah. And as far as proving compliance with the non-monetary portions, again, I think just a joint stipulation between Mr. Galbraith and counsel for the Teamsters that we would just file with the court would suffice. And we could work with your clerk about what form that filing would take. So. And we could even talk about, I mean, if you wanted a written, if we do meet, whatever that meet and confer looks like, you know, we could even, I could even tender a written status report. And then the court is going to follow up hearing in person, whatever you want to call it. We could set it after the submission. Back in the trial court. Yeah, we are. That's exactly right. Okay. All right. Anything further? No. All right. Thank you both. Thank you. We appreciate your candor and assistance here. Thank you all again. We will take this matter under advisement and issue an order in due course. Thank you very much.